## ABBOTT v. HERRON.

### Opinion delivered April 19, 1909.

1. WITNESSES—CROSS-EXAMINATION—IMPEACHMENT.—When a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answer, be subsequently contradicted by the party putting the question. (Page 209.)

2. TENDER—SUFFICIENCY.—A tender of money is insufficient unless the tender is kept good by paying the money tendered into the registry of the court or otherwise. (Page 209.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; reversed.

*Trimble, Robinson & Trimble,* for appellant.

I.   If the contract for rent was for more than one year and not in writing, it was void under the statute of frauds, and the jury should have been so instructed. The tenancy was at will. 36 Ark. 518.

2.   When a tender has been refused, it must be followed up in order to make it good, and when pleaded the money must be brought into court. 30 Ark. 505; 38 Ark. 329.

*George M. Chapline,* for appellee.

I.   Parol lease of land for the term of one year, to commence at a date subsequent to the making of the contract, is valid. 65 Ark. 604.

2.   The fact that appellee tendered $15 was not an admission that he owed it. 65 Ark. 521.

BATTLE, J.   C. C. Abbott filed a complaint against Tate Herron in the Lonoke Circuit Court, alleging that he was the owner of and entitled to the possession of certain lots in the town of Lonoke, in this State. That on the 15th day of August, 1906, he leased the lots to the defendant for one year, and placed him in possession thereof. "That, after the expiration of said lease, plaintiff demanded possession and declined to lease the same to Herron for any additional length of time, because it was his intention to move to Lonoke permanently and occupy the premises himself. That afterwards, on the 6th day of September, he agreed to let the defendant remain on said premises and occupy the house thereon as a tenant at sufferance until he, the

plaintiff, got ready to move to Lonoke. This was with the understanding and agreement that Herron, during the time he occupied said premises as such tenant, would pay rent therefor at the end of each month. That he wholly failed, neglected and omitted to do so from that time up until the 20th day of December, 1907. That about the same time plaintiff further agreed that the said Herron might continue to occupy said premises with his family in consideration that Herron would board plaintiff, when plaintiff moved to Lonoke, for said occupancy, but refused to lease said premises to defendant for any definite length of time or for any other consideration. That on the 30th day of June the said Herron notified plaintiff that he could not board him any longer, and demanded that plaintiff get out by the 1st of July, 1908, and further stated to the plaintiff that he had eaten his last meal there, and refused to board him any longer, which was a breach of his said agreement and contract. That the said defendant owed a balance of $25.80 as rent during the time he occupied said premises from September 6, 1907, to December 20, 1907, the time his board was to begin, which was past due, which defendant refused to pay. That he now wilfully and unlawfully occupies and holds possession of said premises after possession thereof has been demanded and notice to quit in writing duly served on him. That plaintiff is lawfully entitled to the possession of said lots and premises above described."

And asked for judgment for the possession of the lots, and for $100.00 as damages, and for costs.

Defendant answered and alleged that on the 15th day of September, 1907, he paid to plaintiff all that he was owing him for the rent of lots in Lonoke, and that plaintiff leased to him the lots until the first day of January, 1909. He denied that he is indebted to plaintiff for the rent of the lots from the second day of September, 1907, until the 20th day of December, 1907; and denied that at the time he leased the lots he agreed to board plaintiff for the use and occupancy of the lots. He alleged that plaintiff, on the 22d day of December, 1907, moved to the lots to board, but no price was agreed upon; and that he took possession of a part of the lots and kept his horses there. He denied that he owed plaintiff a balance of $25.80 for rent for the

time he occupied the lots from the second day of September, 1907, until the 20th day of December, 1907. He alleged that at the time this action was brought plaintiff was indebted to him for board from the 22d day December to the day of the commencement of this action at the rate of $20 per month, aggregating $126.66; that plaintiff is indebted to him for thirty-two bushels of corn at sixty-five cents per bushel, $20.80; for work on hydrant, $1.50; for padlock, 50 cents, and for amount paid for water, $5. He alleged that, notwithstanding plaintiff is indebted to him, he, within three days after he was notified to surrender possession of the lots, tendered to plaintiff $15, which was more than he was entitled to.

Plaintiff replied and denied that he was indebted to the defendant for board or on any other account, and that legal tender was made to him for rent due and unpaid.

Each of the parties adduced evidence in the trial in the action which tended to prove the allegations of his pleadings. Plaintiff testified in his own behalf. On cross-examination he testified in response to interrogatories as follows:

"Q. Now, Doctor, didn't you make arrangements, while you were there at Mr. Herron's, to move to Kerr Station? A. I did make arrangements. Q. Make a trade with Dr. Brewer? A. In February * * * Doctor Brewer spoke to me and told me what a nice location he had, and wanted me to come there and locate, and asked me how I would like it, and I said I had not considered it very much, and that I would think it over and after I had thought over it for a while I would see him again. I told him that if I could make the arrangements that I wanted to and could see my way clear it might be possible he and I could make a deal. * * * I could not tell exactly when it was. Q. Didn't you consummate the trade with him? * * * A. No, sir; I didn't."

Over the objection of the plaintiff, Dr. J. F. Brewer testified in behalf of the defendant as follows: "I am acquainted with Dr. Abbott. I live at Kerr, Arkansas. Dr. Abbott made a trade with me to move to Kerr, which we closed the first of February (1908). He did not comply with his trade."

The court instructed the jury at the request of the defendant, over the objection of the plaintiff, as follows:

"If you find that the defendant was renting by the month for money rent, and within three days after notice to quit you find that upon a settlement between them he would not have owed the plaintiff more than fifteen dollars, and he offered to pay that amount, then the plaintiff fails in this action, and you will find for the defendant."

Other instructions were given.

The jury returned a verdict, and the court rendered a judgment, in favor of the defendant, and the plaintiff appealed.

The testimony of Dr. Brewer was inadmissible. It was used to contradict the plaintiff, Abbott, as to a collateral matter, as to which he testified on cross-examination. The rule in such cases was stated by this court in *Butler* v. *State,* 34 Ark. 480, 485, as follows: "In order to avoid an interminable multiplication of issues, it is a settled rule of practice that when a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answer, be subsequently contradicted by the party putting the question. The test of whether a fact inquired of in cross-examination is collateral is this—would the cross-examining party be entitled to prove it as part of his case, tending to establish his plea?" In this case the defendant denied that he agreed to board the plaintiff in payment for rent, and alleged that he had leased the lots until the first day of January, 1909, and that plaintiff was indebted to him. The testimony of Dr. Brewer was as to transactions which occurred subsequently to the time when the contract of lease by plaintiff to defendant was made, was entirely disconnected with it, threw no light upon it, and did not tend to prove that either was indebted to the other, and according to the rule stated was inadmissible. See *Brown* v. *State,* 24 Ark. 620; *Jones* v. *Malvern Lumber Co.,* 58 Ark. 125; *Plunkett* v. *State,* 72 Ark. 409; *Hinson* v. *State,* 76 Ark. 366.

The instruction given at the request of the defendant over the objection of the plaintiff as to tender of fifteen dollars should not have been given. There was no evidence that he kept the tender good. It is true that he tendered to plaintiff fifteen dollars, which was refused. But this is not sufficient. "After a tender is duly made, it must, to preserve its legal effect, be kept good." *Kelly* v. *Keith,* 85 Ark. 30, 32. The defendant

denied that he was indebted to plaintiff, but said he had tendered to him fifteen dollars. He made no offer to keep it good by paying it into the registry of the court or otherwise. He was content with having made it at two different times. He did not renew it in his answer.

Reversed and remanded for a new trial.